## APPEAL OF H. H. HORNFECK & SON, INC.

Docket No. 4086.   Submitted September 1, 1925.   Decided April 3, 1926.

A corporation may not include in its invested capital amounts due its stockholders by reason of its purchase of assets therefrom.

*Robert H. Koehler, Esq.*, for the taxpayer.
*R. P. Smith, Esq.*, for the Commissioner.

Before STERNHAGEN, GREEN, and LOVE.

This appeal arose out of the Commissioner's determination of a deficiency in income and profits taxes in the sum of $5,758.98 for the fiscal years ending January 31, 1919, and January 31, 1920. The petitioner contends that it is entitled to have included in its invested capital for the years in question certain balances standing on its books to the credit of its stockholders.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office in the City of New York. Some time prior to 1890, H. H. Hornfeck and A. C. Hornfeck, his wife, formed a copartnership which continued until the death of H. H. Hornfeck in March, 1909. After the death of H. H. Hornfeck, his son, M. R. Hornfeck, became a partner in the business, and thereafter it was operated by the new partnership until May, 1916, at which time there was organized a corporation under the name of H. H. Hornfeck & Son, Inc., which corporation took over all the business, assets, and property of the partnership, including the good will, which was of considerable value.

At the time of the organization of the corporation the partners paid $10,000 cash, and received therefor stock of the corporation of the par value of that amount.

The partners turned over to the corporation net assets of $111,-296.57, good will of $20,000, making in all a total value of the assets of $131,296.57. The contract of sale between the partnership and the corporation expressly provided that $131,296.57 should be placed to the credit of the partners upon the books of the corporation, payable on demand; and that such credit was expressly subject to all of the indebtedness of the said partnership and expressly subject to all present and future indebtedness of the corporation. No cash was paid at the time of the transfer of the assets, and the only consideration received by the partners was the obligation of the corporation to pay the amount named, as evidenced by the contract and by the credits to their individual accounts upon the books of the corporation.

On the first day of April, 1918, the corporation issued to the former partners its stock of the par value of $90,000, and charged the individual accounts of the partners with $90,000. Between May, 1916, and January 31, 1919, $32,273.09 had been credited to the individual accounts of the former partners as " accrued officers' salaries." This amount is not claimed as invested capital. By January 31, 1919, the individual accounts, by reason of debits and credits, had been reduced to $73,569.66. This amount, reduced by the accrued salaries above referred to, left a balance of $41,296.57, which the taxpayer contends it is entitled to have included in its invested capital.

### OPINION.

GREEN: The taxpayer contends that the remainder of the purchase price, $41,296.57, standing to the credit of the stockholders on its books, is in fact a paid-in surplus and as such should be included in

its invested capital. The Commissioner contends that such amount should, in the computation of invested capital, be treated as borrowed money. The taxpayer calls our attention to the provision of the contract by which such credit to the stockholders is expressly made subject to the claims of the general creditors. It cites the case of *Eaton* v. *English & Mersick Co.*, 7 Fed. (2d) 54, and contends that the rule therein announced is contrary to the rule announced by this Board in the *Appeal of Kelly-Buckley Co.*, 1 B. T. A. 1154. In the *English & Mersick* case the court said:

> These accounts did not bear interest, and were not understood by the stockholders (except for salary items) to be an indebtedness of the corporation to them.

The court held that the crediting of the accounts with their proportionate part of the surplus was not a dividend. It also said:

> As the plaintiff employed its surplus in its business, it must have been either as "invested capital" or as "borrowed capital." The surplus having never been distributed but during the entire period was retained in its own treasury, it could not have constituted "borrowed capital." The corporation could not borrow its own funds. And the shareholders could not loan what they at no time owned or had received.

The facts in this appeal are not parallel to those in the *Mersick* case. The accounts here were understood to be an indebtedness of the corporation to the stockholders. Upon what other theory could the stock of the par value of $90,000 have been issued to them? There is and can be no question of dividends in this case. Nor do we have an earned surplus. True, as pointed out by the taxpayer, the partnership had a surplus over the original investment, but that did not become, on the transfer of the assets to the corporation, a corporate surplus. The corporation acquired net tangible assets of the value of $111,296.57 and good will of the value of $20,000, a total of $131,296.57, for which it agreed to pay $131,296.57 to the partnership. Such a transaction does not give rise to a corporate surplus, unless the promise to pay meant nothing and the transaction was in fact a gift. This is refuted by the subsequent issue of stock of the par value of $90,000.

This appeal is in its essentials the same as the *Appeal of Kelly-Buckley Co.*, *supra*, and the rule there announced is controlling here.

*The deficiency is $5,758.98. Order will be entered accordingly.*